**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAJIMAN HAFIZ,

    Plaintiff,

  v.

GREENPOINT MORTAGE FUNDING, INC., a business entity, form unknown, AURORA LOAN SERVICES, LLC, a business entity, form unknown, QUALITY LOAN SERVICE CORP., business entity, form unknown, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a business entity, form unknown, MARIN CONVEYANCING CORP., a business entity, form unknown, entities unknown, claiming any legal or equitable right, title, estate, lien or interest in property described in this complaint adverse to plaintiff's title thereto, and DOES 1 through 30, inclusive,

    Defendants.

No. C 09-01729 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This is a motion to dismiss plaintiff's claims in a foreclosure dispute. This order finds that each of plaintiff's sixteen claims are either legally or factually insufficient or are preempted under federal law. Accordingly, defendants' motion is **GRANTED**.

**STATEMENT**

Plaintiff Majiman Hafiz initiated this action against defendants for monetary damages and equitable relief. Before the present case was removed to federal court, she filed this lawsuit

in conjunction with an application for a temporary restraining order. The alleged purpose of this application was to prevent defendants from proceeding with the "illegal" foreclosure sale of her property after she fell behind on her monthly payments. The date for the trustee's sale was originally set by the trustee, Quality Loan Services, for April 15, 2009, but has since been extended.

Hafiz is a Fijian who has resided in the United States for approximately thirty years. During oral argument, Hafiz's counsel conceded that, contrary to the indications in her complaint and briefing, Hafiz does not reside in the property in question. Admittedly, Hafiz is an experienced speculator in real estate investments. She owned thirteen separate rental properties at the time her complaint was filed. Hafiz's counsel admitted during oral argument that in spite of the content of her complaint, Hafiz is not on the verge of being cast out from her residence and left homeless; rather, she is over fifty-years old, experienced in the industry, and merely stands to lose one of many investment properties. It is worth noting that this is one of several similar complaints recently filed by Hafiz in federal court.

In her complaint, Hafiz alleges that she applied for and obtained a $452,000 loan from defendant Greenpoint Mortgage on November 26, 2006. The loan featured an adjustable rate and was secured against Hafiz's property. Hafiz alleges that she was asked to sign loan documents, which included a yield spread premium and other fees, without being given the proper time for review. Greenpoint allegedly also failed to make certain mortgage-related disclosures as required under state and federal law. Hafiz alleges that the repayment schedule under the loan would eventually "outstrip" her ability to pay.

Greenpoint was named as the payee on the promissory note and defendant MERS was named as the trustee on the deed of trust when the loan was closed. The deed of trust was recorded in December 2006. Greenpoint thereafter entered into an assignment and assumption agreement and a pooling and service agreement. Quality is now the substituted trustee under the deed of trust.

Aurora Loan Services became the servicer to plaintiff's mortgage refinancing loan with Greenpoint on March 1, 2007. Hafiz entered into a workout agreement with Aurora effective January 27, 2009. Hafiz subsequently defaulted on her payments under the workout agreement.

In her complaint, Hafiz alleges that defendants collectively violated various statutes and committed numerous common law torts by engaging in "unfair predatory lending practices." Defendant's unfair lending practices allegedly included charging excessive fees and failing to use reasonable underwriting standards or make the proper disclosures under federal and state law. Finally, Hafiz alleges that defendants' attempts to enforce the loan's terms are unlawful because of the above-mentioned practices and because defendants as they have not produced the original promissory note lack standing.

This action was commenced in the Superior Court of the County of Contra Costa but was removed to this court pursuant to 28 U.S.C. 1331, 1441, and 1446. Hafiz's motion to remand this action to state court due to alleged procedural defects has been denied in a companion order.

**ANALYSIS**

**1. LEGAL STANDARD.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Material factual allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party but courts are not bound to accept as true "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. In order to defeat a Rule 12(b)(6) motion to dismiss, a claim must be factually supported and plausible on its face — conclusory legal allegations and speculative inferences do not suffice.

Courts may consider material not appended to the complaint such as court filings and matters of public record without converting a motion to dismiss into one for summary judgment. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). This order finds that the documents

3

submitted by the parties are properly the subject of judicial notice, at least as to the fact and date of their publication. Fed. R. Evid. 201(b)(2).[1]

### 2. DEFENDANTS GREENPOINT AND MARIN.

#### A. Declaratory Relief.

Hafiz seeks declaratory relief against all defendants. This "cause of action" is ultimately a request for relief — in order to weigh it, this order must examine its underlying claims. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000).

Hafiz asserts that defendants have no right to foreclose. Hafiz's request for declaratory relief is based on the erroneous theory that all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool. This argument is both unsupported and incorrect. Hafiz's complaint refers to each of the defendants in their capacities as lenders and trustees. In fact, attached as exhibits to Hafiz's complaint are the mortgage agreement, the deed of trust, the refinancing agreement, and related documentation. Hafiz does not dispute that the parties are who they claim to be. She merely suggests that they must produce a physical copy of the original note before exercising their contractual rights. Hafiz's argues a moot and distracting point.

Quality, as the undisputed trustee under the deed of trust, has the right to initiate non-judicial foreclosure proceedings. "California law does not require possession of the note as a precondition to non-judicial foreclosure under a deed of trust . . . Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a non-judicial foreclosure." *Pagtalunan v. Reunion Mortgage Inc.*, 2008 WL 961995, at *1 (N.D. Cal. 2008) (M. J. Laporte). The trustee has the power and the duty to initiate foreclosure proceedings on the property upon the trustor's default, resulting in a sale of the property. *Lomboy v. SCME Mortg. Bankers*, 2009 WL 1457738, at *5 (N.D. Cal. 2009) (J. Conti). In this case, the beneficiary (Greenpoint) made a substitution of trustee and granted Quality the power

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

4

to foreclose, as permitted under California law. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 364 (2008).

Plaintiff entirely misstates the law in alleging that defendants must present a note in order to foreclose under the deed of trust. The facts plaintiff alleges to support her declaratory relief theory could not possibly give rise to a cognizable legal claim.

### B. Demand for Accounting.

An accounting may take the form of a legal remedy or an equitable claim. On the pleadings, Hafiz presents no case for either.

*First*, Hafiz does not relate her request for an accounting to any of the myriad of claims in her complaint. Instead, she merely alleges that she does not know how much money she owes defendants and that this amount cannot be calculated without an accounting. A request for a legal accounting must be tethered to relevant actionable claims. Hafiz has not anchored her request to any viable claims.

*Second*, Hafiz provides no grounds to establish equity jurisdiction for an accounting. The authorities cited by plaintiff, namely *Whann v. Doell*, 192 Cal. 680 (1923), and *Kritzer v. Lancaster*, 96 Cal. App. 2d 1 (1950), are excellent illustrations of the shortcomings of her position. Ordinarily, a plaintiff must demonstrate a fiduciary relationship between herself and the defendant as well as refer to a sum owed to her by the defendant in order to successfully bring a claim in equity for an accounting. Hafiz has done neither, nor has she pleaded any of the extraordinary situations which might otherwise substantiate an assertion of equity jurisdiction.

### C. Civil Conspiracy.

Civil conspiracy is a legal doctrine that gives rise to an actionable claim against persons who share a common plan or design in the perpetration of a tort without actually committing it themselves. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510 (1994). Thus, a civil conspiracy claim is not independent and can only succeed if it is linked to an independently tortious act. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).

Hafiz claims that defendants were engaged in a conspiracy that involved most of the claims in this action but offers no basis for a conspiracy claim. *First*, as discussed below, Hafiz has not adequately stated any tort claims in her complaint. *Second*, Hafiz's statutory claims relate to disclosure between lenders and borrowers. Even if a violation of any of these statutes could lead to a conspiracy claim, Hafiz's conspiracy claim relies on the idle statement that defendants "conspired to conceal" and is not supported by any theories or allegations of fact. Thus unsupported, her civil conspiracy claim likewise must fail.

**D.    RESPA Violation.**

Hafiz claims that the $3,995.00 yield spread premium (YSP) paid by Greenpoint violated Section 2607 of RESPA, 12 U.S.C. 2601, *et seq.*

Hafiz incorrectly asserts that the statute of limitations for Section 2607 is three years. The applicable limitations period in this case is one year. 12 U.S.C. 2614. As plaintiff admits that she obtained a copy of loan documents which disclosed the amount of the YSP on December 7, 2006, she relies on the doctrine of equitable tolling to stay the limitations period on her claim.

"The doctrine of equitable tolling has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). It is not necessary for this order to determine whether equity should toll the statute on Hafiz's claim. Given the factual deficiencies of the complaint, Hafiz has no RESPA claim to toll. In any event, the only argument that Hafiz offers in support of her request for tolling is that some courts have held that the statute of limitations in a RESPA claim may be subject to equitable tolling. Hafiz otherwise made no further allegations. The mere fact that the statute may be tolled in some cases does not imply *a fortiori* that the statute should be tolled in this case.

In sum, Hafiz baldly alleges that the YSP was "illegal" without providing any support in fact or in reason. The only effort Hafiz makes to ground her claim is to rephrase a legal standard in the negative. This is a textbook example of the sort of legal draftsmanship that the Supreme Court sought to curb in *Ashcroft*. Pleadings based entirely on conclusory legal

6

1  statements bereft of any factual references do not satisfy the generous standard set forth in
2  Rule 8(a)(2).

### E. ECOA Violation.

While quoting directly from a complaint recently filed by another plaintiff in *Lomboy*, Hafiz alleges that an unspecified defendant, as a creditor, discriminated against her, as a credit applicant, in violation of Section 1691 of the ECOA. Section 1691 provides that it is unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age.

While the Ninth Circuit has not had an opportunity to articulate a standard for ECOA discrimination claims, other circuits apply a multi-element test to determine whether a plaintiff properly has pleaded a claim of discrimination under the ECOA. To satisfy this test, plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified. *Chiang v. Veneman*, 385 F.3d 256, 259 (3rd Cir. 2004). Hafiz's allegations plainly contradict the fourth element of this test.[2]

The ECOA was implemented to ensure that applicants have an *equal opportunity to obtain credit*. Hafiz allegedly was offered more credit than she requested. Even if Hafiz could produce a theory for how an offer of excess credit is discriminatory, it would be difficult for her to show how such discrimination could run afoul of the ECOA, which is designed to ensure *access* to credit.

Regardless of the test used to define "discrimination" under the ECOA, Hafiz's gossamer claim that defendants discriminated against her fails to meet pleading requirements for factual sufficiency. Her discrimination claim is based upon nothing more than the suggestion that she was approved for (and thereafter accepted) more credit than she applied for because she was a Fijian, rather than Caucasian, female. The complaint makes no further effort to explain how her approval for extra credit would be discriminatory or to provide any factual basis for her

---

[2] *Accord Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1246 (10th Cir. 1999); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 994 (5th Cir. 1995).

7

1  conclusions. Furthermore, the complaint declines to show how Quality to whom the promissory
2  note was assigned, and other defendants which did not originate the loan, could have engaged in
3  discriminatory credit practices if they did not perform the services of a lender. Finally, plaintiff
4  contends that the statute of limitations should likewise equitably toll her ECOA claim.
5  Plaintiff's claim is time-barred pursuant to the two-year limitations period set forth in 15 U.S.C.
6  1691e(f). Plaintiff meekly cites to *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
7  113 (2002) in support of this claim. The cited passage from *Morgan*, however, merely stands
8  for the proposition that equitable tolling is not inapplicable in discrimination cases. Just as
9  Hafiz fails to allege facts that could support a claim for an ECOA violation, Hafiz fails to
10 provide the minimum information necessary to invoke an equitable doctrine meant to be applied
11 "sparingly." *Ibid*.

### F. FHA Violation.

Plaintiff alleges that defendants engaged in a practice known as "reverse-redlining" in violation of the FHA, 42 U.S.C. 3601, *et seq*. The FHA makes it unlawful "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."

The term "reverse-redlining" refers to a discriminatory practice whereby a lender unlawfully extends credit to a neighborhood or class of people, typically within a specific geographic area, on terms less favorable than would have been extended to people outside the particular class at issue. Courts have only recently begun to treat reverse-redlining claims as cognizable under the FHA so the Ninth Circuit has not had an opportunity to rule on the matter. Where reverse-redlining claims are recognized, a four-part test governs whether a plaintiff sufficiently has pleaded a claim under the FHA. The plaintiff must allege: (1) that she is a member of a protected class; (2) that she applied and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender either intentionally targeted

8

her for unfair loans or currently makes loans on more favorable terms to others. *Munoz v. International Home Capital Corp.*, 2004 WL 3086907, at *4 (N.D. Cal. 2004) (M. J. Seeborg).

Assuming that the logic behind enforcing reverse-redlining claims pursuant to Section 3605 of the FHA is persuasive, plaintiff's FHA claim falls short of the minimum threshold of factual sufficiency required to defeat a motion to dismiss. Plaintiff leanly recites the elements of the claim in her complaint. She alleges that she is a female Fijian who qualified for loans that were given on grossly unfavorable terms by Greenpoint. She then accepted the full amount offered, although the offer was allegedly intentionally extended to her on less favorable terms than to her "Caucasian counterparts." These are legal conclusions couched as factual allegations which are not entitled to a presumption of truth. Plaintiff cannot state a claim for relief without asserting the minimum factual allegations to satisfy the requirements of notice pleading. *Ashcroft*, 129 S. Ct. at 1950.

As with her ECOA claim, plaintiff does not explain which defendants violated the FHA.

In their defense, Greenpoint and Marin Conveyancing Corp. contend that as the alleged discriminatory housing practice occurred on December 7, 2006, Hafiz's claim is barred by the applicable statute of limitations. 42 U.S.C. 3613(a)(1)(A). Hafiz did not respond to this contention in her opposition. This order need not make a finding on this issue at present because plaintiff's pleadings are inadequate to state a reverse-redlining claim.

**G.    Breach of Implied Covenant of Good Faith and Fair Dealing.**

With this claim, Hafiz seeks to imply an extra-contractual covenant of good faith and fair dealing in human affairs.

As a general rule, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. "The implied covenant is a supplement to an existing contract, and thus it does not require the parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 798 (2008). In spite of plaintiff's opinion that it is "nonsensical," the covenant is implied in contracts, not in negotiations.

9

Eight of Hafiz's nine allegations of fact made to support her breach of implied covenant claim concern issues that arose prior to the agreement. She alleges, for example, defendants' "failure to disclose to plaintiff that she was likely to default because of the lack of affordability of the loan." Even if such allegations could be construed as legally colorable claims, they still speak to the formation of the contract, rather than its performance or enforcement, and are thus defective.

In Hafiz's ninth allegation, she states that "defendants" did not disclose the fact that "they" had assigned the promissory note on her loan. She makes no effort to explain how this failure to disclose might be wrongful or how it might constitute a breach of the implied covenant. To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract. This Hafiz has not done.

Finally, in an effort to overcome the deficiencies of her complaint, Hafiz endeavors to reformulate and supplement this claim with allegations raised for the first time in her opposition. Even if these allegations were permissible, non-conclusory, or coherent additions, they would still fail for the same reasons as those actually included in her complaint.

### H. Violation of California Civil Code Sections 1920 and 1921.

Hafiz claims that defendants violated California Civil Code Sections 1920 and 1921 by "failing to meet the requirements" of those sections. Plaintiff's complaint contains no facts that would permit such a conclusion and offers no guidance for how these sections might have been violated.

Defendants contend that the Alternative Mortgage Transaction Parity Act (AMTPA) preempts plaintiff's state law statutory claims. 12 C.F.R. 560.220. Congress enacted the AMTPA with the intention of permitting non-federally chartered housing creditors to engage in alternative mortgage financing under federal law. 12 U.S.C. 3801–3802. This order need not address defendants' preemption defense on this point because Hafiz's Section 1920 and 1921 claims fail due to factual insufficiency.

10

### I.     Violation of California Civil Code Section 1916.7.

Plaintiff claims that defendants "and each of them" violated Section 1916.7 of the California Civil Code. Section 1916.7 requires creditors to provide a form disclosure notice when issuing adjustable loans secured by owner-occupied real property. Defendants challenge the validity of the disclosure requirement of Section 1916.7 in light of federal regulations set forth in AMTPA.

In *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 864 (9th Cir. 2003), the Ninth Circuit held that, while AMTPA does not completely and expressly preempt all California laws relating to alternative mortgage transactions, it does preempt some conflicts between state law and federal regulation. Later, in *Quicken Loans, Inc. v. Wood*, 449 F.3d 944, the Ninth Circuit found no preemption by AMTPA where the disputed statutes did not restrict housing creditors' ability to enter into alternative mortgage transactions and did not present a facial conflict with the AMTPA. The *Quicken* decision cited *National Home Mortgage Association v. Face*, 239 F.3d 644 (4th Cir. 2001), as an instance in which state statutory law did present a direct conflict with OTS regulations and the AMPTA and was therefore preempted.

In *Face*, the Fourth Circuit found that a state statute that contradicted the AMTPA was preempted:

> The operative language of the Parity Act, contained in 12 U.S.C. § 3803, provides that state-chartered deposit institutions and other non-federally chartered housing creditors may make alternative mortgage transactions to the extent that they are "made in accordance with federal regulations governing alternative mortgage transactions for federally chartered savings and loan associations" and that the regulations are legally issued by the OTS or other relevant agency. And critically, the same section provides that a non-federally chartered housing creditor may make an alternative mortgage transaction pursuant to applicable federal regulations "notwithstanding any State constitution, law, or regulation."

*Face*, 239 F.3d at 637. The language of the statute provides that conflicting state laws governing "alternative mortgage transactions" are preempted where those transactions comply with relevant OTS regulations. *See* 12 C.F.R. 560.35, 560.210, 226.19(b), 226.20(c).

Alternative, conflicting, or more rigorous disclosure requirements would interfere with housing creditors' ability to enter into alternative mortgage transactions. Hafiz has not

11

1  articulated a theory whereby defendants would be liable for violating Section 1916.7 of the
2  California Civil Code in spite of the AMPTA. Nor has Hafiz responded to defendants' assertion
3  that the California Civil Code is preempted. Consequently, this claim cannot survive
4  defendants' motion.

### J. Rescission.

The tenth "cause of action" in the complaint calls for rescission. Rescission is a remedy, not a claim. Hafiz's prayer for the Court to rescind the loan contract hinges on the theory that she was fraudulently induced to enter into a contract with defendants. As her request for rescission rests upon her fraud claim, and her fraud claim is defective, this remedy is not available to her.

Furthermore, Section 1691 of the California Civil Code reads, in relevant part: "to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind . . . [r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise." In addition, Section 1691 provides that where no restoration offer has been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such an offer. In accordance with California law, an order of rescission would require Hafiz to tender the property that she received pursuant to the lease agreement.

As of the filing date of her opposition, Hafiz maintained that she was entitled to recover the title to her property without repaying any principal or interest on the loan secured by that property. This is perverse.

### K. Fraud.

FRCP 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally. A pleading is sufficient under FRCP 9(b) if it "identifies the time, place, and nature of the alleged fraudulent activities." The plaintiff must set forth an explanation of how or why alleged statements or concealment

12

are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 2004) (*en banc*).

The elements of a fraud claim are: (1) defendant misrepresents or conceals material facts; (2) with knowledge of the falsity of the representations or the duty of disclosure; (3) with intent to defraud or induce reliance; (4) which induces justifiable reliance by the plaintiff; (5) to his or her detriment. *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007). In order to prevail, the plaintiff must allege and prove that he or she actually relied upon the misrepresentations and, in the absence of fraud, would not have entered into the contract or transaction. *Mega Life & Health Ins. Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1530 (2009).

In the present case, plaintiff alleges intent to defraud and resulting injury. Assuming that plaintiff's allegations actually embrace material facts, are not conclusively contradicted, and impacted her decision to enter into a contract, plaintiff has stated particular instances in which a communication or lack thereof was fraudulent. Plaintiff has not, however, properly alleged a duty owed to her by defendants.

One of the many instances of fraud cited in the complaint is defendants' failure to disclose their "fiduciary duty" to plaintiff. No further elaboration or reference to case or statutory law is offered. As discussed below, plaintiff has not stated a plausible claim for relief with her breach of fiduciary duty claim. Accordingly, plaintiff has likewise failed to meet the pleading requirements for her fraud claim.

### L.     **Unfair Business Practices.**

In raising this claim, plaintiff quotes directly from the complaint in *Lomboy*, 2009 WL 1457738, at *7, alleging that defendants violated Business & Professions Code Sections 17200 and 17500, *et seq.*, by "using bait and switch tactics; making loans without providing borrowers with sufficient, accurate and understandable information regarding the terms and conditions of the loan; and making loans without providing borrowers with sufficient, accurate and understandable information regarding the nature and extent of the financial risk being assumed by the borrowers." Plaintiff borrows again from *Lomboy* in alleging in her

13

1  complaint that "the conduct of Defendants threatens an incipient violation of various consumer
2  protection statutes, or which violate the policy or spirit of such laws."
3        Sections 17200 and 17500, *et seq.*, prohibit "any unlawful, unfair or fraudulent business
4  act or practice. This cause of action is derivative of some other illegal conduct or fraud
5  committed by a defendant, and a plaintiff must state with reasonable particularity the facts
6  supporting the statutory elements of the violation." *Lomboy*, 2009 WL 1457738, at *7. In that
7  Hafiz has not stated any plausible claims for relief, she has not stated a claim for relief for unfair
8  business practices.

### M. Breach of Fiduciary Duty.

10        Plaintiff claims that each defendant had a fiduciary duty to her and that each of them
11  breached that duty. Defendants range from lenders to loan servicers to trustees and beneficiaries
12  under the deed of trust. She advances no theory of fiduciary responsibility as to any of these
13  parties. Furthermore, no plausible theory to support this claim presents itself in prevailing
14  law where it is well-settled that lenders and creditors are ordinarily not fiduciaries of
15  borrower-customers. *Nymark v. Heart Federal Savings and Loan Ass'n*, 231 Cal. App. 3d
16  1089, 1093 (1991).
17        Plaintiff has not alleged or shown that she has a legal claim against defendants based on
18  a breach of fiduciary duty theory.

### N. Unjust Enrichment.

20        Unjust enrichment, also known as restitution, is not a theory of recovery but is instead a
21  result thereof. *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008). Plaintiff claims
22  that the mortgage payments she made pursuant to the loan agreement unjustly enriched
23  defendants. Her only explanation for this claim is that defendants allegedly committed fraud
24  and violated RESPA. As discussed above, each of these respective claims fails. Plaintiff also
25  claims that defendants have no standing to foreclose on her mortgage in a non-judicial sale.
26  This allegation is likewise unsubstantiated. Plaintiff has not shown that defendants were unjustly
27  enriched because she tendered the initial payments on her loan and did not immediately commit
28  a breach of contract.

14

### O. Injunctive Relief.

Plaintiff asserts injunctive relief as a "cause of action" against all defendants. Injunctive relief is a remedy which must rely upon underlying claims. If plaintiff seeks injunctive relief, she should request it as part of her prayer for relief.

### P. Quiet Title.

Plaintiff seeks to quiet title against all defendants. The purpose of a quiet title action is to establish one's title against adverse claims to real property or any interest therein. Hafiz refuses to offset the debt which remains a cloud upon her title. *Cf. Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003). Moreover, plaintiff has failed to allege precisely what adverse interest she is seeking to quiet title against and which party holds the claims asserted against her title. *See* Cal. Civ. Proc. Code § 760.020(c). Her failure to satisfy the foregoing requirements is fatal to her quiet title claim.

### 3. DEFENDANT AURORA.

Aurora was neither involved in Hafiz's credit application nor in the origination or issuance of the loan to Hafiz. On the face of the complaint, Aurora could not have violated RESPA, the FHA, or the ECOA. Hafiz has dropped her UCL claim and her claims regarding California Civil Code Sections 1916.7, 1920, and 1921 as to Aurora.

Finally, for the reasons enumerated above, the remainder of Hafiz's various claims, demands, and requests for relief all fail to state a claim upon which relief could be granted.

## CONCLUSION

The Court notes that no motion for preliminary injunction has been made to this Court. In her complaint, plaintiff brings "causes of action" in lieu of claims, and asserts as "claims" legal remedies. Of the legally cognizable claims asserted in plaintiff's complaint, none meets the most basic pleading requirements.

This seems to be a routine situation in which a borrower took on an adjustable rate loan and defaulted when the adjustments took hold. There appears to be no viable claim for relief. Solely out of caution, plaintiff may have until **JULY 24, 2009, AT NOON** to file a motion seeking leave to amend and stating with specificity why the amendments would state a claim. Inasmuch

15

as this entire action has all of the hallmarks of a classic stalling action, please do not ask for any extensions without excellent cause.

Accordingly, defendants' motion to dismiss all claims is hereby **GRANTED**. Plaintiff may file for leave to amend in accordance with the foregoing instructions.

**IT IS SO ORDERED.**

Dated: July 15, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE